# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JENNIFER W.[1],                                   Case No. 1:21-cv-361
      Plaintiff,                              Litkovitz, M.J.

vs.

COMMISSIONER OF                                **ORDER**
SOCIAL SECURITY,
      Defendant.

Plaintiff Jennifer W. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3)

for judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security

income (SSI). This matter is before the Court for disposition based upon plaintiff's statement of

errors (Doc. 16), the Commissioner's response in opposition (Doc. 19), and plaintiff's reply

(Doc. 20).

## I. Procedural Background

Plaintiff protectively filed her applications for DIB and SSI in November 2017, alleging

disability since February 28, 2017, due to back problems, heart problems, migraines,

fibromyalgia, liver disease, thyroid disorder, depression, anxiety disorder, memory loss, and

narcolepsy. The applications were denied initially and upon reconsideration. Plaintiff, through

counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ)

Lloyd E. Hubler III. Plaintiff and a vocational expert (VE) appeared telephonically and testified

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

at the ALJ hearing on July 20, 2020.  On September 23, 2020, the ALJ issued a decision denying

plaintiff's DIB and SSI applications.  This decision became the final decision of the

Commissioner when the Appeals Council denied review on March 27, 2021.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A)

(DIB) and 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in

the work previously performed or in any other substantial gainful employment that exists in the

national economy.  42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or
mental impairment – *i.e.*, an impairment that significantly limits his or her
physical or mental ability to do basic work activities – the claimant is not
disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the
listings in Appendix 1 to Subpart P of the regulations and meets the duration
requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her
past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by demonstrating an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2022.

2. [Plaintiff] has not engaged in substantial gainful activity since February 28, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: Degenerative disc disease of the lumbar, thoracic and cervical spine; obesity; fibromyalgia; cardiac problems; anxiety; depression; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following restrictions: She can occasionally climb ramps or stairs but can never climb ladders, ropes or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She can have frequent exposure to hazardous moving machinery or unprotected heights. She can work in an environment where she would perform static routine tasks. She can have occasional contact and interaction with supervisors and coworkers but no contact with general public.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. [Plaintiff] was born [in] … 1975 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from February 28, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-26).

---

[2] Plaintiff's past relevant work was as a retail salesclerk, a semi-skilled, light position.  (Tr. 25, 54).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as night cleaner (73,000 jobs nationally), price marker (124,000 jobs nationally), and mail sorter (98,000 jobs nationally).  (Tr. 25-26, 55).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B*., 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).  *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

5

**D.      Relevant Medical Opinions**

*1.      Jennifer Stoeckel, Ph.D.*

Jennifer Stoeckel, Ph.D., examined plaintiff on October 11, 2018, for disability purposes. (Tr. 662-68).  Plaintiff complained of depression.  Plaintiff reported cooking infrequently as standing is difficult, requiring her to use a chair in the kitchen.  She can perform laundry activities if her sons help, but they generally do their own laundry.  She does not do regular cleaning, but will load or unload the dishwasher.  "She sleeps at the frequency of four to five hours per night but awakens frequently.  She may nap one to two hours during the daytime." (Tr. 663).  Plaintiff noted that medications helped with her crying.  Plaintiff reported attending no regular mental-health treatment, as she found counseling to be unhelpful.  (Tr. 664).

Dr. Stoeckel observed that plaintiff ambulated slowly and in a guarded manner, though she did not use an assistive device.  On mental status examination, her speech was "choppy" and without spontaneous conversation.  Her thought process was found to be logical without digression, confusion, or flight of ideas.  She had a blunted/flat affect and reported experiencing depression more days than not.  (Tr. 665).  Plaintiff did not appear anxious, but was "moderately somatically preoccupied."  (Tr. 666).  Plaintiff was unable to complete serial subtractions from 100.  (*Id.*).  Dr. Stoeckel assessed plaintiff with persistent depressive disorder.  (*Id.*).

Dr. Stoeckel opined that plaintiff has sufficient concentration for simple repetitive tasks but may have difficulty with multitasking.  Dr. Stoeckel also noted that: "Under stress, [plaintiff] is likely to develop increased depression and mood-related symptoms.  In the past, she reports

she had been very tearful which is partially controlled with the medication but admits that she decompensates with minimal pressure. She seems to have limited coping skills." (Tr. 668).

2.     *Phillip Swedberg, M.D.*

On June 5, 2019, Dr. Swedberg performed a consultative examination of plaintiff, which was limited to "cardiovascular/pulmonary/pre-exercise test" examination. (Tr. 780-81). Plaintiff complained of chest pain "any time I walk up the stairs." (Tr. 780). She described the pain as non-radiating, "pressure" lasting 15-30 minutes. (*Id.*). Plaintiff denied palpitations or syncope. (*Id.*). She described shortness of breath that worsens during episodes. (*Id.*). Plaintiff also described dyspnea when walking through the grocery store, and she sometimes used a motorized cart. (*Id.*). On examination, Dr. Swedberg found irregular rhythm and controlled rate. (Tr. 781). Dr. Swedberg decline to perform exercise testing because plaintiff reported poor exercise tolerance and chest pain with exertion, and atrial fibrillation. (*Id.*). Dr. Swedberg commented that plaintiff was a poor historian. (*Id.*).

3.     *Connie Kane, LSW*

Plaintiff treated with therapist Ms. Kane beginning in August 2019. (Tr. 1427). On February 4, 2020, Ms. Kane noted that plaintiff suffered from persistent depressive disorder, social anxiety disorder, and post-traumatic stress disorder (PTSD). She opined that plaintiff was markedly limited in her abilities to work at an appropriate and consistent pace, or complete tasks in a timely manner; to adapt to changes; to manage psychologically-based symptoms; and to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. (Tr. 789-90). Ms. Kane also opined that plaintiff was moderately limited in her

abilities to follow one or two step oral instructions to carry out a task; recognize and correct a mistake; sequence multi-step activities; sustain an ordinary routine and regular attendance at work; work a full day without needing more than the allotted number or length of rest periods; make plans independently of others; maintain appropriate personal hygiene and attire; and respond to requests, suggestions, criticism, correction and challenges. (Tr. 788-90).

4.    *State agency review – Physical Impairments*

On October 27, 2018, state agency physician, William Bolz, M.D., reviewed plaintiff's record and determined she was limited to light exertional work with occasional postural activities. (Tr. 70-71). Dr. Bolz based his assessment on plaintiff's degenerative disc disease, fibromyalgia, and obesity. (Tr. 71). On July 9, 2019, Maureen Gallagher, D.O., reviewed plaintiff's file upon reconsideration and affirmed Dr. Bolz's opinion with additional limitation to no ladders/ropes/scaffolds and the avoidance of concentrated exposure to hazards. (Tr. 105-06).

5.    *State Agency Review – Mental Impairments*

On October 28, 2018, Carl Tishler, Ph.D., reviewed plaintiff's file and determined that plaintiff has mild restrictions in understanding, remembering and applying information; moderate limitations interacting and relating with others; mild difficulties maintaining concentration, persistence or pace; and moderate limitations in adapting or managing oneself. (Tr. 68). Dr. Tishler found that plaintiff requires employment with little to no interaction with the public and static, routine tasks. (Tr. 72). On February 16, 2019, Dr. David Dietz, Ph.D., reviewed plaintiff's file upon reconsideration and affirmed Dr. Tishler's assessment. (Tr. 107-09).

### E.   Specific Errors

On appeal, plaintiff contends the ALJ: (1) improperly evaluated the medical source opinion of consultative psychologist, Jennifer Stoeckel, Ph.D.; (2) failed to support with substantial evidence his discounting of Dr. Swedberg's examining opinion; and (3) misstated or ignored evidence of record, materially undermining his Residual Functional Capacity (RFC) determination.  (Doc. 16 at PAGEID 2219-25).

The Commissioner counters that the ALJ properly considered and evaluated the psychological opinions and prior administrative findings and adopted an RFC that accounts for plaintiff's credibly established mental limitations.  In addition, the ALJ properly relied upon the state agency's prior administrative medical findings in formulating his physical RFC finding. Additionally, the ALJ appropriately analyzed the evidence and found inconsistencies that led him, overall, to credit plaintiff's allegations in part but not in their entirety.  (Doc. 19 at PAGEID 2241-51).

#### 1.   The ALJ's Evaluation of Dr. Stoeckel's Opinion is Supported by Substantial Evidence.

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions.  *See* 20 C.F.R. §§ 404.1520c and 416.920c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).  These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the

weight afforded to such opinions.[4]  *Id.*  The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[5], including those from your medical sources."  20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a).  Rather, the Commissioner will consider "how persuasive" the medical opinion is.  20 C.F.R. § 404.1520c(b); 20 C.F.R. § 416.920c(a).[6]

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion.  20 C.F.R. § 404.1520c(c)(1)-(5).  The most important factors the ALJ must consider are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).  With respect to the supportability factor, "[t]he more relevant the objective medical evidence[7] and supporting

---

[4] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[5] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[6] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical."  *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n. 1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)).  For claims filed on or after March 27, 2017, these regulations are found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c, respectively.  The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations, and vice versa, for purposes of this Order.

[7] Objective medical evidence is defined as "signs, laboratory findings, or both."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

Plaintiff contends the ALJ's evaluation of Dr. Stoeckel's opinion is not supported by substantial evidence and is contrary to the regulations. Plaintiff argues that Dr. Stoeckel, a psychological consultative examiner, opined that plaintiff "may have difficulty with multitasking" and would likely develop increased depression under stress due to inadequate coping skills. Plaintiff contends that even though the ALJ found Dr. Stoeckel's opinions "persuasive," he nevertheless failed to properly analyze the supportability and consistency of Dr. Stoeckel's opinions and incorporate Dr. Stoeckel's specific restrictions into the RFC. (Doc. 16 at PAGEID 2219-22). The Commissioner responds that the ALJ properly considered and

11

evaluated the psychological opinions and prior administrative findings[8] and adopted an RFC that accounts for plaintiff's credibly established psychological limitations. (Doc. 19 at PAGEID 2241-46).

The ALJ's evaluation of Dr. Stoeckel's opinion is supported by substantial evidence. Dr. Stoeckel completed a psychological (disability) evaluation report. (Tr. 661-668). Plaintiff reported to Dr. Stoeckel that "she is applying for benefits due to predominantly physical issues." (Tr. 663). Plaintiff had previously seen a psychiatrist who referred her to counseling, but she reported no regular mental health treatment, history of psychiatric admissions, or previous use of psychotropic medications. (Tr. 664-65).

Dr. Stoeckel reported that plaintiff ambulated slowly but without an ambulatory aid, and her attire was "casual and neat." (Tr. 665). Her speech was "choppy," but her thought processes "appeared to be logical, cohesive, and goal-directed" and without "digression, confusion, flight of ideas, nor loose associations." (Id.). Plaintiff reported no symptoms of mood dysregulation, history of suicidal ideation, or "other vegetative symptoms of depression," but her affect was "blunted and flat." (Id.). She was "alert and oriented times four," and her intellectual functioning appeared average. (Tr. 666).

Dr. Stoeckel conducted no psychological testing and diagnosed plaintiff with persistent depressive disorder. (Id.). In her functional assessment, Dr. Stoeckel noted that plaintiff "could

---

[8] The Commissioner argues that because Dr. Stoeckel is an agency psychological consultant, her statements constitute "prior administrative medical findings" rather than "medical opinions." (Doc. 19 at PAGEID 2241 n. 3). However, "[w]hile the new regulations differentiate between 'medical opinions' and 'prior administrative medical findings,' the regulations do not ascribe greater significance to either, and both are evaluated utilizing the same factors." *Stith v. Comm'r of Soc. Sec.*, No. 1:20-CV-02312, 2022 WL 493526, at *7 n. 6 (N.D. Ohio Jan. 31, 2022) (citing 20 C.F.R. § 416.920c(c)).

follow oral or written instructions" and that her "[c]ognitive functioning is consistent with her

previous work and academic history." (Tr. 667). She further indicated that plaintiff "has

sufficient concentration for simple repetitive tasks but may have difficulty with multitasking."

(Tr. 668). The final two paragraphs of her report state:

> [Plaintiff] reports that she is fairly social. She interacts with family and friends and
> does not report irritability or a history of difficulty relating to others in workplace
> settings.
>
> * * *
>
> Under stress, [plaintiff] is likely to develop increased depression and mood-related
> symptoms. In the past, she reports she had been very tearful which is partially
> controlled with the medication but admits that she decompensates with minimal
> pressure. She seems to have limited coping skills.

(*Id.*).

With regard to Dr. Stoeckel's consultative examination, the ALJ concluded:

> I find the assessment of Dr. Stoeckel, who performed a psychological consultative
> examination of [plaintiff] persuasive. She did not espouse any significant
> functional restrictions for [plaintiff] and instead only summarized [plaintiff]'s
> performance during the consultative examination (5F/7-8). This comports with
> [plaintiff]'s lack of mental-health treatment up until that time. Therefore, I find this
> assessment persuasive.

(Tr. 24).

"Although the new standards are less stringent in their requirements for the treatment of

medical opinions, they still require that the ALJ provide a coherent explanation of his

reasoning." *White v. Comm'r of Soc. Sec.*, No. 1:20-cv-588, 2021 WL 858662, at *21 (N.D.

Ohio Mar. 8, 2021). As other courts have clarified:

> The new regulations "set forth a 'minimum level of articulation' to be provided in
> determinations and decisions, in order to 'provide sufficient rationale for a
> reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495,
> 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01

(2017)). An "ALJ's failure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [plaintiff's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at \*11 (W.D. Tenn. July 20, 2021).

*Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021); *see also Butcher v. Comm'r of Soc. Sec.*, No. 2:20-CV-6081, 2021 WL 6033683, at \*4 (S.D. Ohio Dec. 21, 2021) (same quotation).

In this case, the ALJ met that minimum standard of articulation. Although he used the words "comports with" rather than "consistent with," the ALJ found that Dr. Stoeckel's lack of significant functional restrictions was consistent with plaintiff's failure to seek significant mental health treatment previously, with the assessments of the state agency psychological consultants, and with the more recent treatment notes from Modern Psych and Wellness. (Tr. 23-24). The ALJ noted Dr. Stoeckel's description of plaintiff as "not overly anxious" and lacking symptoms of PTSD or generalized anxiety disorder. (Tr. 23). The ALJ further considered Dr. Stoeckel's report (dated October 11, 2018) that plaintiff was "logical, cohesive and goal-directed." (*Id.*). In addition, the ALJ explained that he examined and relied upon the more recent treatment notes from Modern Psych & Wellness with whom plaintiff began mental health treatment in July 2019. (Tr. 23). The ALJ credited the diagnostic inventories plaintiff's mental health provider administered and plaintiff's own report that she was "doing well on medication as of April 2020" and again in July 2020. (*Id.*). The ALJ reasonably imposed limitations that plaintiff "have little to no interaction with the public" and perform only "static and routine tasks" to accommodate plaintiff's psychological impairments. (Tr. 24). Finally, the ALJ was under no obligation to adopt Dr. Stoeckel's opinions verbatim. "Even where an ALJ provides 'great weight' to an

14

opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). The ALJ reasonably considered the record as a whole, including plaintiff's evidence of more recent treatment notes, which post-dated Dr. Stoeckel's examination, in fashioning an RFC. Accordingly, the ALJ's evaluation of Dr. Stoeckel's report is supported by substantial evidence, and plaintiff's first assignment of error is overruled.

### 2. The ALJ's Decision Not to Further Develop the Record Regarding Plaintiff's Cardiac Impairment is Supported by Substantial Evidence.

Plaintiff next contends that the ALJ should have further developed the record concerning plaintiff's cardiac impairment in light of Dr. Swedberg's opinion that plaintiff could not tolerate exercise testing and because Dr. Swedberg lacked the benefit of the most recent ventricular ejection fraction test results. (Doc. 16 at PAGEID 2222-23). Plaintiff argues that "ALJs are 'not qualified to translate raw medical data, such as MRIs, into functional capacity determinations.'" (Doc. 16 at PAGEID 2222) (quoting *Jones v. Comm'r of Soc. Sec.*, No. 3:19-CV-142, 2021 WL 843100, at *4 (S.D. Ohio Mar. 5, 2021) (quoting *Mitsoff v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 693, 703 (S.D. Ohio 2013)). The Commissioner argues that the ALJ found plaintiff's cardiac problems to be a severe impairment and, as a matter of law, the ALJ may formulate his RFC finding without a medical opinion. (Doc. 19 at PAGEID 2246-47).

First, it is well-settled that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity." *Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x 435, 439 (6th Cir. 2010)

15

(internal citations and quotations omitted) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629,

633 (6th Cir. 2004)). "An ALJ does not improperly assume the role of a medical expert by

weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron*,

391 F. App'x at 439 (citing *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 157 (6th Cir. 2009);

*Dixon v. Massanari,* 270 F.3d 1171, 1177-78 (7th Cir. 2001)). *See also* 20 C.F.R. §§ 416.946(c)

and 404.1546(c) (the ALJ is responsible for assessing a residual functional capacity). As the

Sixth Circuit has explained:

> [Plaintiff] also argues that the ALJ's RFC lacks substantial evidence because no
> physician opined that [plaintiff] was capable of light work. But "the *ALJ* is charged
> with the responsibility of determining the RFC based on her evaluation of the
> medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x
> 719, 728 (6th Cir. 2013) (emphasis added). An RFC is an "administrative finding,"
> and the final responsibility for determining an individual's RFC is reserved to the
> Commissioner. SSR 96-5p, 1996 WL 374183, at *1-2 (July 2, 1996). "[T]o require
> the ALJ to base her RFC on a physician's opinion, would, in effect, confer upon
> the treating source the authority to make the determination or decision about
> whether an individual is under a disability." *Rudd*, 531 F. App'x at 728.

*Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017); *see also Mokbel-*

*Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously

rejected the argument that a residual functional capacity determination cannot be supported by

substantial evidence unless a physician offers an opinion consistent with that of the ALJ.").

Second, in this case, the ALJ did not craft the RFC by interpreting raw medical data.

Plaintiff's doctors read and interpreted the heart catheterization and echocardiogram results and

explained them in plain language. Dr. Najamul Ansari, M.D., of the TriHealth Heart Institute,

performed plaintiff's 2017 cardiac catheterization, reported that it revealed a mildly elevated

pulmonary artery pressure and elevated left ventricular end-diastolic pressure for which he

recommended diuresis and blood pressure control.  (Tr. 387-89).  Dr. Harold Pretorius, M.D., who specializes in endocrinology, metabolism and nuclear medicine, reported that his January 2018 testing revealed a left ventricular ejection fraction near 70% but with "diastolic dysfunction."  (Tr. 795).  On June 12, 2019, Dr. Regina Kayse, M.D., summarized plaintiff's June 2019 echocardiogram results as indicating a left ventricular ejection fraction of 50 – 55% with normal left ventricular wall motion.  (Tr. 783).  Dr. Kayse elaborated that plaintiff's left and right ventricular wall motion was normal with normal ventricular sizes; both the left and right atrial sizes were normal; mitral, aortic, tricuspid, and pulmonic valves were normal in structure with no evidence of stenosis, fluttering, or prolapse; and there was no pleural or pericardial effusion.  (Tr. 783-84).

Based on these and other medical records, the ALJ concluded that plaintiff's "cardiac problems" constituted a severe impairment pursuant to 20 C.F.R. §§ 404.1520(c) and 416.920(c) but the "intensity, persistence or limiting effects of the claimant's cardiac impairments" would not prevent her from working.  (Tr. 18, 22).  The ALJ found the state agency medical consultants' assessments persuasive, he explained, because their conclusions that plaintiff could perform a range of work at the light exertional level subject to additional restrictions was consistent with the conservative treatment plaintiff received for her spine and cardiac impairments.  (Tr. 24).  He cited the 70% and 50 – 55% ejection fraction[9] echocardiogram

---

[9] Plaintiff alleges—and the Commissioner does not dispute—that a normal left ventricular ejection fraction for females is between 54% and 74%.  (Doc. 16 at PAGEID 2223).  According to the Mayo Clinic website, a normal ejection fraction is 50% to 75% while "a borderline ejection fraction can range between 41% and 50%." https://www.mayoclinic.org/tests-procedures/ekg/expert-answers/ejection-fraction/faq-20058286#:~:text=The%20left%20ventricle%20is%20the,between%2041%25%20and%2050%25.  (last visited July 7, 2022).

results, her largely unremarkable heart catheterization and chest x-ray results, and the fact that

she had not undergone any treatment typical for those with major heart difficulties (such as

angioplasty, stenting, or bypass surgery) in support of his conclusion that plaintiff's cardiac

impairments would not prevent her from working at a light exertional level with additional

postural and environmental limitations.  (Tr. 22-23).

Finally, Dr. Swedberg completed only a limited cardiovascular/pulmonary/pre-exercise

test exam form.  (Tr. 780-81).  In it, he reported that he did not believe plaintiff could tolerate

exercise testing due to self-reported poor exercise tolerance and chest pain with exertion.  (Tr.

781).  Dr. Swedberg offered no opinion concerning the impact plaintiff's cardiac impairments

might have on her ability to perform work-related activities.  Thus, the ALJ was not required to

consult Dr. Swedberg on Dr. Kayse's finding a week later that plaintiff's ventricular ejection

fraction tested at 50% to 55%.

Plaintiff also contends the ALJ inconsistently found her cardiac issues to be a severe

impairment while the state agency consultants, whose opinions the ALJ found persuasive, did

not.  (Doc. 16 at PAGEID 2223).  Plaintiff is correct that neither characterized plaintiff's cardiac

impairments as severe.  (Tr. 68, 102).  Nevertheless, the state agency consultant on

reconsideration, Dr. Maureen Gallagher, D.O., explicitly considered listing 4.02 for congestive

heart failure (Tr. 103), which necessarily implies a finding of a severe heart impairment.  *See* 20

C.F.R. § 404.1525(a) ("The Listing of Impairments . . . describes for each of the major body

systems impairments that we consider *to be severe enough* to prevent an individual from doing

any gainful activity, regardless of his or her age, education, or work experience.") (emphasis

added). Moreover, Dr. Gallagher cited plaintiff's echocardiogram results (including the 55%

ejection fraction finding) in explaining her RFC for light work. (Tr. 105). Any purported

conflict between the ALJ's severity finding and the consultant's opinion is harmless.

Accordingly, the ALJ's decision not to further develop the record regarding plaintiff's cardiac

issues is supported by substantial evidence.

### 3. The ALJ's Consideration of Plaintiff's Symptom Severity and Residual Functional Capacity (RFC) are Supported by Substantial Evidence.

ALJs are to "consider all of the evidence in an individual's record" and determine

whether the individual is disabled by examining "all of the individual's symptoms, including

pain, and the extent to which the symptoms can reasonably be accepted as consistent with the

objective medical evidence and other evidence in the individual's record." SSR 16-3p, 2016 WL

1119029, at *2. ALJs also evaluate what the agency formerly termed the "credibility" of a

plaintiff's statements about his or her symptoms. *See, e.g.*, *Rogers*, 486 F.3d at 246-49. In

March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective

symptom evaluation is not an examination of an individual's character. . . ." SSR 16-3p, 2016

WL 1119029, at *1 (March 16, 2016) (rescinding and superseding SSR 96-7p). To avoid such

mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's

subjective description of symptoms with the record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F.

App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113,

119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record

contains objective medical evidence of an underlying medically determinable impairment that

could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

(i)     Your daily activities;

(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on

objective medical evidence, then we carefully consider other evidence in the record in reaching a

conclusion about the intensity, persistence, and limiting effects of an individual's symptoms.");

20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and

persistence of your pain or other symptoms or about the effect your symptoms have on your

ability to work solely because the available objective medical evidence does not substantiate

your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in
> the regulations for evaluating symptoms. The determination or decision must
> contain specific reasons for the weight given to the individual's symptoms, be
> consistent with and supported by the evidence, and be clearly articulated so the
> individual and any subsequent reviewer can assess how the adjudicator evaluated
> the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also id.* at *7 (noting that the ALJ "will discuss the

factors pertinent to the evidence of record").

At the same time, the ALJ is not required to cite or discuss every factor used to evaluate

the consistency of a plaintiff's description of symptoms with the record evidence. *See White v.*

*Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she

had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing

credibility. There is no indication that the ALJ failed to do so. This claim therefore lacks merit.

. . .").  Further, the ALJ's determination regarding the consistency of a claimant's subjective

complaints with the record evidence is "to be accorded great weight and deference. . . ."  *Walters*

*v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of H.H.S.*,

818 F.2d 461, 463 (6th Cir. 1987)).[10]

---

[10] The *Walters* court noted that substantial deference was appropriate due in large part to an ALJ's unique
observation of a witness's "demeanor and credibility."  With the elimination of the term "credibility" in SSR 16-3p,

Plaintiff contends that the ALJ misstated or ignored medical evidence of record in evaluating plaintiff's symptom severity thereby undermining his RFC finding. (Doc. 16 at PAGEID 2224-25). Specifically, plaintiff argues that the ALJ ignored positive exam findings of psychomotor slowing, stutters, and memory deficit in considering the mental health opinion evidence and positive exam findings of thoracolumbar tenderness, diminished extension, and positive bilateral facet loading tests in considering the medical evidence of plaintiff's back and leg pain. (*Id.*). The Commissioner responds that the ALJ neither misstated nor ignored this evidence but simply weighed it along with the other psychological and physical evidence in formulating an appropriate RFC. (Doc. 19 at PAGEID 2249-51).

The ALJ concluded that plaintiff has the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with the additional restrictions that she can only occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; perform only static routine tasks; have occasional contact and interaction with supervisors and coworkers; and no contact with the general public. (Tr. 20). This finding is supported by substantial evidence.

First, with regard to plaintiff's positive exam findings of psychomotor slowing, stutters, and memory deficit, the ALJ discussed plaintiff's memory issues, "chopping manner" of speaking, lack of spontaneous conversation, and "flat, depressed and anxious affect." (Tr. 19, 23). However, despite plaintiff's self-characterization as "forgetful," inability to complete serial

---

it is questionable whether an ALJ's observations should be given any deference. At least one Sixth Circuit decision subsequent to the enactment of SSR 16-3p, however, has retained the notion of deference to the ALJ in the symptom-consistency context. *See, e.g., Lipanye*, 802 F. App'x at 171 ("It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements.").

subtraction tests, and "[t]reatment records [that] document [plaintiff] having a poor memory," he concluded that plaintiff has only a mild limitation in understanding, remembering or applying information because she completed a college certificate program, reads, writes, performs basic math, and presents with average intellectual functioning (including retention of four digits forward and three in reverse and five of five objects after a five-minute delay). (Tr. 19). Similarly, the ALJ recognized the medical evidence related to psychomotor concerns and plaintiff's moderate limitations in adapting and managing herself, but he noted that she attends Bible study group; goes to church events and the grocery store; possesses a valid driver's license; volunteers at a nursing home; manages her own personal care; exhibited logical, cohesive and goal-directed thought processes on exam; did not previously receive significant mental health treatment or psychosocial support; and exhibited and self-reported psychological improvement once she established treatment with Modern Psych & Wellness in 2019 (even though she continued to display a flat, depressed affect). (Tr. 19, 20, 23).

Second, concerning plaintiff's back and leg pain, the ALJ discussed her diagnoses of lumbar radiculopathy and facet arthritis of the lumbar region and the fact that her MRI exhibited "degenerative changes most pronounced at the L4-L5 level." (Tr. 21 (quoting Tr. 682-83)). However, the ALJ found that her contention of disabling back and leg pain was undermined by the fact that she had undergone only conservative treatment and "has not exhibited clinical signs consistent with her alleged back and leg pain." (Tr. 21-22). Specifically, examinations revealed that plaintiff exhibited negative straight-leg raising tests; demonstrated full strength as well as normal gait and station; exhibited a full range of motion in her cervical spine; could perform one-

23

half of a squat; and, as of February 2020, demonstrated a normal range of motion and strength in her extremities.  (Tr. 22).

While plaintiff at times exhibited positive exam findings, it was the ALJ's duty, and not this Court's, to weigh the conflicting evidence and assess the consistency of plaintiff's subjective complaints.  *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghingheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)).  The ALJ considered a number of factors in determining symptom consistency, including plaintiff's treatment course, the objective evidence, and clinical findings on examination.  The ALJ's decision in this regard finds substantial support in the record.  Plaintiff's third assignment of error is overruled.

## IT IS THEREFORE ORDERED THAT:

Based on the foregoing, plaintiff's statement of errors (Doc. 16) is **OVERRULED**, the decision of the Commissioner is **AFFIRMED**, judgment is entered in favor of the Commissioner, and this case is **CLOSED** on the Court's docket.

Date: 7/18/2022

Karen L. Litkovitz
United States Magistrate Judge